**CONTINUATION OF APPLICATION FOR A SEARCH WARRANT**

1. I, Geoffrey Yandl, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), am currently assigned to the Grand Rapids, Michigan, Field Office. I have been employed as a Special Agent with ATF since 2007, prior to which I was a Special Agent with the U.S. Secret Service for approximately four years. I have been involved in numerous violations of the Federal Firearms laws.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued. As a Special Agent with ATF, my duties include the investigation of alleged violations of federal criminal laws, including the subject offense of 18 U.S.C. § 922(g)(1) (Felon in Possession of Firearms and Ammunition).

3. I am seeking a search warrant for records and information belonging to **Facebook Inc.,** headquartered in Menlo Park, California, which pertain to violations of the subject offenses. Specifically, I am seeking a search warrant for records pertaining to Facebook account **www.facebook.com/lucanwood2**.

4. The information contained in this continuation is based upon information obtained personally by me and information provided to me by other law enforcement officers and agents who have participated in this investigation. This continuation does not contain all the information known as a result of this investigation, but only those facts that I believe are necessary to establish probable cause for the search warrant sought.

**PROBABLE CAUSE**

5. Lucan Woodruff is a convicted felon, prohibited from possessing firearms because he has the following convictions: escape—awaiting trial for felony in 1997; assault with intent to rob while armed in 2001; and prisoner possessing contraband in 2005. Woodruff was discharged from parole by the Michigan Department of Corrections in March 2018.

6. In December 2020, Michigan State Police (MSP) Detectives received information from a Source of Information (SOI).[1] The SOI stated s/he knew information about illegal firearms possession in the Muskegon Area. The SOI provided MSP with the following information:

    a. Lucan Woodruff, also known as "C.B.," resides on Pontaluna Road in Fruitport, Michigan and drives a Chevrolet Malibu.

    b. Within the past two weeks, the SOI has observed Woodruff with firearms, including a revolver and a semiautomatic pistol.

---

[1] The name and contact information of the SOI is known to law enforcement; it is not included here to protect his/her identity.

  c. The SOI also observed photographs of additional firearms Woodruff claims to own, including a rifle with an attachment that the SOI suspected was a grenade launcher.

  d. The SOI also reported that Woodruff purchased firearm ammunition from Gary's Guns in Muskegon, Michigan.

7. Detective Hayes of the MSP then located a publicly-available Facebook page for Lucan Woodruff, **www.facebook.com/lucanwood2.**  The below photos captured from that publicly-available Facebook page were originally posted on October 2, 2019.  The first photo then appeared again in Woodruff's Facebook post on September 12, 2020.





8. The photos depict Woodruff wearing a tactical vest. Attached to the left side of the vest, under his left arm, is a pistol holster. A pistol can be seen inside the holster.

9. On December 17, 2020, I searched the Michigan Secretary of State's driver's license database and obtained the following information:

   a. I obtained a known photo of Woodruff from the Michigan Secretary of State driver's license database and compared it to the photographs on his public Facebook page. The individual in the photos posted on Woodruff's public Facebook page appear to be Woodruff.

   

   b. Additionally, my search of the Michigan Secretary of State's driver's license database indicated that Woodruff's registered address is 3691 Pontaluna Road. This confirms the information received from the SOI that Woodruff resides on Pontaluna Road in Fruitport, Michigan.

   c. I was unable to locate any vehicles registered to Woodruff. I then searched the database for information regarding Woodruff's wife, Staci Woodruff, and determined that she had registered in her name a Chevrolet Malibu. This confirms the information received from the SOI that Woodruff drives a Chevrolet Malibu.

10. In my knowledge, training, and experience, I know that individuals who have Facebook accounts regularly use the account to communicate with others. They will post messages on their own pages, respond to posts by others, and send private messages. Individuals often post pictures of themselves with firearms to threaten or to brag, or to raise their credibility or status. Individuals will often share the same information with multiple friends/users. Individuals will often disclose personal information and share pictures that display distinctive clothing, locations, or information that identifies them and provides proof of attribution to establish who is responsible for the content of the Facebook account.

11. On December 17, 2020, I issued a preservation request to Facebook for the following account: **www.facebook.com/lucanwood2**

**APPLICATIONS GENERALLY AND FACEBOOK SPECIFICALLY**

12. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

13. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

14. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

15. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

16. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular

4

dates and times. A particular user's profile page also includes a "Wall" or "Timeline," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

17. Facebook allows users to upload photos and videos, which may include metadata, such as the location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

18. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

19. If one Facebook user deletes private messages with another user, those messages may still be retained in the other user's account.

20. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

21. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

22. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

23. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

24. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

25. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

26. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

27. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

28. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall or Timeline postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

29. Facebook also retains Internet Protocol ("IP") logs for a given User ID or IP address. These logs may contain information about the actions taken by the User ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the User ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

30. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of **Attachment B**.  Upon receipt of the information described in Section I of **Attachment B**, government-authorized persons will review that information to locate the items described in Section II of **Attachment B**.

7

## CONCLUSION

34. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(l)(A) & (c)(l)(A). Specifically, the Court is "a district court of the United States . . . that—has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

35. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

36. I am advised by the U.S. Attorney's Office that the notice requirement of Fed. R. Crim. P. 41(f)(1)(C) applies to the service provider, not to the subscriber or customer of the service, pursuant to 18 U.S.C. § 2703(b)(1)(A). *See United States v. Bansal*, 663 F.3d 634, 662-63 (3d Cir. 2011). Finally, although the Government is not required to provide notice to the subscriber or customer, I am aware that Facebook may have instituted a business policy of notifying subscribers of the receipt of legal process unless ordered by a court not to do so. The U.S. Attorney's Office has advised me that 18 U.S.C. § 2705(b) provides authority for the Court to command the recipient of a warrant or other order issued under Section 2703 not to notify any other person of the existence of such warrant or order if the Court finds reason to believe that such notice would result in danger to a person's life or safety, flight from prosecution, destruction of evidence, witness intimidation, or other serious jeopardy to an investigation. I request that the Court order Facebook not to disclose the existence of this warrant because notice would likely give targets an opportunity to destroy or tamper with evidence, change patterns of behavior, or notify confederates. Although Section 2705(b) does not set a time limit for the duration of a non-disclosure order, I submit that a period of 180 days, subject to extension upon a showing of need by the Government, would be reasonable.

37. Based on the above factual information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of criminal offenses in violation of 18 U.S.C. § 922 (g)(1) (Felon in Possession of Firearms and Ammunition) may be found in the location described in **Attachment A.**

38. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in **Attachment B.**